1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | ROCHELLE C. EAST
Senior Assistant Attorney General
4 | THOMAS S. PATTERSON
Supervising Deputy Attorney General
5 | KENNETH T. ROOST, State Bar No. 231444
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5824
Fax: (415) 703-5843
8 | Email: Ken.Roost@doj.ca.gov

9 | Attorneys for Defendants Cook, Fischer, Foss,
Kirkland, McGuyer, O'Neill, Pena, Randolph, Ruff,
10 | Smith, and Stewart

11

IN THE UNITED STATES DISTRICT COURT

12

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

SAN FRANCISCO DIVISION

14

15 | **HAROLD B. SHAMBURGER,**

16 | Plaintiff,

17 | v.

18 | **R. KIRKLAND, et al.,**

19 | Defendants.

20

21 | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**

22 | **PLAINTIFF'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS**

23 | **AND AUTHORITIES**

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES                                          2

Statement of Issues                                                          2

Statement of the Case                                                        2

Statement of Facts                                                           3

Argument                                                                     4

I.   MOST CLAIMS MUST BE DISMISSED BECAUSE SHAMBURGER
     DID NOT EXHAUST HIS AVAILABLE REMEDIES BEFORE FILING
     SUIT.                                                                   4

     A.   Exhaustion is Required Before Filing Suit in Federal Court.        4

     B.   Shamburger Exhausted One Related Administrative Grievance Preceding
          This Action.                                                      5

     C.   Shamburger's Administrative Grievances Did Not Address the
          Allegations Related to his Fourth, Fifth, and Seventh Claims.      6

II.  CLAIMS RISING FROM BEFORE SEPTEMBER 2003 ARE
     BARRED BY THE STATUTE OF LIMITATIONS.                                   7

     A.   Shamburger's Allegations Arguably Date Back to 2000.               7

     B.   The Limitations Period Applicable to Shamburger's § 1983 Claims Is
          Two Years at Most.                                                7

     C.   Shamburger's Claims for Equitable Relief Toll for Two Years.       8

     D.   Shamburger Filed His Complaint More Than Four Years After Some
          Claims Accrued.                                                    8

III. SHAMBURGER'S SECOND CLAIM SHOULD BE DISMISSED
     BECAUSE HE FAILS TO RAISE A LEGITIMATE CLAIM.                           8

IV.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OF
     SHAMBURGER'S THIRD AND SOLE REMAINING CLAIM
     BECAUSE THE EVIDENCE SHOWS THAT HE IS AN ACTIVE PRISON-
     GANG MEMBER WHO HAS RECEIVED ALL PROCESS DUE HIM.                       9

     A.   Only One of Shamburger's Eight Claims Remains to Be Addressed.     9

     B.   Defendants Are Entitled to Summary Judgment of Sub-Claims A, B,
          and D Because the Undisputed Evidence Shows that Shamburger
          Received All Process Due Him.                                      9

          1.   Contrary to Sub-Claim A, Shamburger Received Proper Housing
               Hearings.                                                    9

Defs.' Mots. Dismiss & Summ. J.                    *Shamburger v. Kirkland, et al.*
                                                   C 07-4597 JSW (PR)

i

**TABLE OF CONTENTS  (continued)**

Page

2. Contrary to Sub-Claim D, Housing Committees All Noted that
Shamburger Was an Active Prison-Gang Member.                          11

C.   The Court Screened Out Sub-Claims E and F.                           11

D.   Defendants Are Entitled to Summary Judgment of Sole Remaining
Sub-Claim C Because the Three Reliable Source Items Evidenced
Shamburger's Continuing Prison-Gang Participation.                   12

V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.                       13

A.   The Standard for Finding Qualified Immunity.                         13

B.   No Defendant Violated Any of Shamburger's Constitutional Rights.     14

C.   Defendants Are Entitled to Qualified Immunity Because It Would Not
Have Been Clear to Reasonable Officials that Their Conduct Was
Unlawful.                                                            14

Conclusion                                                               15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defs.' Mots. Dismiss & Summ. J.                          *Shamburger v. Kirkland, et al.*
C 07-4597 JSW (PR)

ii

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Creighton*
483 U.S. 635 (1987) ..... 14

*Bd. of Regents v. Tomanio*
446 U.S. 478 (1980) ..... 8

*Booth v. Churner*
532 U.S. 731 (2001) ..... 4, 5

*Buckley v. Barlow*
997 F.2d 494 (8th Cir. 1993) ..... 12

*Burns v. Reed*
500 U.S. 478 (1991) ..... 14

*Hardin v. Straub*
490 U.S. 526 (1989) ..... 8

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) ..... 13

*Jones v. Blanas*
393 F.3d 918 (9th Cir. 2004) ..... 8

*Mann v. Adams*
855 F.2d 639 (9th Cir. 1988) ..... 11

*McDougal v. County of Imperial*
942 F.2d 668 (9th Cir. 1991) ..... 7

*McKinney v. Carey*
311 F.3d 1198 (9th Cir. 2002) ..... 5

*Porter v. Nussle*
534 U.S. 516 (2002) ..... 4, 5

*Ramirez v. Galaza*
334 F.3d 850 (9th Cir. 2003) ..... 12

*Ritza v. Int'l Longshoremen's & Warehousemen's Union*
837 F.2d 365 (9th Cir. 1988) ..... 5

*Saucier v. Katz*
533 U.S. 194 (2001) ..... 14

*Toussaint v. McCarthy*
801 F.2d 1080 (9th Cir. 1986) ..... 12

Defs.' Mots. Dismiss & Summ. J.                    *Shamburger v. Kirkland, et al.*
                                                    C 07-4597 JSW (PR)

iii

TABLE OF AUTHORITIES  (continued)

**Page**

*Two Rivers v. Lewis*
174 F.3d 987 (9th Cir. 1998)                                                7

*Wilson v. Garcia*
471 U.S. 261 (1985)                                                         7

*Woodford v. Ngo*
548 U.S. 81 (2006)                                                        4, 5

*Wyatt v. Terhune*
315 F.3d 1108 (9th Cir. 2003)                                               5

**Constitutional Provisions**

California Constitution
    Article I
        § 7 and § 15                                                   8, 9

United States Constituion
        Eighth Amendment                                               3, 6, 9
        First Amendment                                                      6

**Statutes**

California Civil Procedure Code
    § 335.1                                                              7, 8
    § 340                                                                   7
    § 352.1(a), (c)                                                         8

California Code of Regulations
    Title 15
        § 3084.1(a)                                                        3
        § 3084.5                                                           3
        § 3341.5(c)(2)(A)                                               3, 10
        § 3341.5(c)(5)                                               3, 10, 11

Prison Litigation Reform Act
    United States Code, Title 42
        § 1997e(a)                                                       1, 4

United States Code
    Title 28
        § 1915                                                             2

United States Code
    Title 42
        § 1983                                                    1, 2, 7, 12

Defs.' Mots. Dismiss & Summ. J.                          *Shamburger v. Kirkland, et al.*
                                                          C 07-4597 JSW (PR)

iv

TABLE OF AUTHORITIES  (continued)

Page

**Court Rules**

Federal Rule of Civil Procedure
  Rule 12(b)                                                    1
  Rule 12(b)(6)                                               1, 5
  Rule 56                                                       1

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5824
    Fax: (415) 703-5843
8   Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants Cook, Fischer, Foss,
   Kirkland, McGuyer, O'Neill, Pena, Randolph, Ruff,
10 Smith, and Stewart

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

| | |
|---|---|
| **HAROLD B. SHAMBURGER,** | C 07-4597 JSW (PR) |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **R. KIRKLAND, et al.,** | |
| Defendants. | |

21      TO PRO SE PLAINTIFF HAROLD B. SHAMBURGER:

22      PLEASE TAKE NOTICE that Defendants Cook, Fischer, Foss, Kirkland, McGuyer,

23  O'Neill, Pena, Randolph, Ruff, Smith, and Stewart (Defendants) hereby move under Federal

24  Rule of Civil Procedure 12(b) to dismiss this 42 U.S.C. § 1983 action for failure to exhaust

25  administrative remedies as mandated by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

26  Defendants also move under Rule 12(b)(6) to dismiss the claims against them because the claims

27  are barred by the statute of limitations.  Finally, Defendants move under Federal Rule of Civil

28  Procedure Rule 56 for this Court to grant summary judgment on the basis that there are no

1   genuine issues of material fact, that Defendants are entitled to judgment as a matter of law, and

2   that they are entitled to qualified immunity.

3       The motion is based on this notice, the memorandum of points and authorities filed in

4   support, the attached declaration, and the pleadings and records on file in this case.

5   **MEMORANDUM OF POINTS AND AUTHORITIES**

6   **Statement of Issues**

7       Plaintiff Shamburger is an inmate housed in Pelican Bay State Prison's Security Housing

8   Unit (SHU) because he is an active prison-gang participant. He raises various allegations

9   concerning his continued housing in the SHU.

10     1.   Has Shamburger properly exhausted his administrative remedies for all his claims

11   where he has only pursued to a final decision one related administrative grievance, which takes

12   issue with his timely receipt of housing-committee reviews and also the reliability of source

13   items found to indicate active prison-gang activity in a 2006 prison-gang-status review?

14     2.   Does the statute of limitations bar any of Shamburger's claims, some of which

15   originated at least eight years before he filed suit?

16     3.   Did Shamburger receive due process when he was reviewed for inactive gang status?

17

18   **Statement of the Case**

19       Plaintiff Shamburger, an inmate upset with his placement and retention in the SHU, filed an

20   eight-claim complaint seeking damages and injunctive relief under 42 U.S.C. § 1983 on

21   September 5, 2007. (Compl.) This Court screened the complaint under 28 U.S.C. § 1915.

22   (Order Service.) Of Shamburger's eight alleged claims (Compl. 15–18), the Court screened out

23   the first claim because hardship stemming from the SHU conditions is not so severe as to violate

24   the Due Process Clause (Order Service 2). The Court also dismissed without prejudice

25   Shamburger's sixth and eighth claims, because they were unrelated to Shamburger's placement

26   and retention in the SHU. (*Id.* 3.) Ultimately, the Court identified four cognizable claims

27   concerning Shamburger's placement and retention in the SHU: (1) due-process violation under

28   the California Constitution; (2) due-process violation of state-created liberty interest; (3) First

Defs.' Mots. Dismiss & Summ. J.

*Shamburger v. Kirkland, et al.*
C 07-4597 JSW (PR)

1    Amendment violation rising from allegations that Shamburger's SHU placement was retaliation

2    for jailhouse lawyering; and (4) Eighth Amendment violation rising from the SHU living

3    conditions.  (Order of Service 2.)

4

5                             **Statement of Facts**

6      1.     CDCR has a four-level administrative-appeals process that permits its inmates to

7    grieve "any departmental decision, action, condition, or policy which they can demonstrate as

8    having an adverse affect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  The four

9    levels of appeal include: (1) an informal level, (2) a first formal level of review, (3) a second

10    level review to the institution head or designated representative, and (4) a final third level of

11    appeal to the Director of the CDCR or designated representative.  Cal. Code Regs. tit. 15, §

12    3084.5.  A decision at the Director's level constitutes exhaustion of an inmate's administrative

13    remedies.  Cal. Code Regs. tit. 15, § 3084.1(a).

14      2.     Shamburger was validated as a Black Guerilla Family prison-gang member in 1995,

15    and has since been housed in the Pelican Bay SHU.  (Decl. Rice Supp. Defs.' Mot. Summ. J.

16    (Decl. Rice) ¶ 4.)  The SHU provides the highest-security inmate housing at Pelican Bay.  (Decl.

17    Rice ¶ 2.)

18      3.     CDCR provides inmates housed indeterminately in the SHU, like validated prison-

19    gang members, with regular classification-committee reviews of housing at least every 180 days.

20    Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A).

21      4.     Between December 2001 and January 2008—a period of roughly six

22    years—Shamburger received fifteen classification-committee reviews concerning his housing,

23    which is three more reviews than the two-per-year requirement.  In every one of these fifteen

24    housing reviews, Shamburger is documented to have refused to appear before the committee.   5.

25      5.     Only an inactive prison-gang member can appear before the Departmental Review

26    Board to be considered by the board for a housing move to the general prison population.  *See*

27    Cal. Code Regs. tit. 15, § 3341.5(c)(5).

28      6.     In 2006, Defendant Correctional Sergeant Stewart, an Institutional Gang Investigator

Defs.' Mots. Dismiss & Summ. J.                                           *Shamburger v. Kirkland, et al.*
                                                                          C 07-4597 JSW (PR)

1   (IGI) at Pelican Bay, investigated Shamburger for recent prison-gang activity to determine

2   whether he was still actively involved in the Black Guerilla Family prison gang. (Decl. Rice ¶ 5.)

3   Sgt. Stewart documented three source items indicating Shamburger's continuing prison-gang

4   participation, provided Shamburger with the report describing this evidence, and afforded

5   Shamburger the opportunity to discuss and take issue with the evidence. (Decl. Rice ¶¶ 5–9.)

6   Shamburger declined, stating that, "I have it in the courts." (Decl. Rice ¶ 9.) The Office of

7   Correctional Safety reviewed and approved the three source items documented by Sgt. Stewart to

8   indicate Shamburger's continuing prison-gang participation. (Decl. Rice ¶ 5.)

9

10   ### Argument

11   ### I.
**MOST CLAIMS MUST BE DISMISSED BECAUSE SHAMBURGER**
12   **DID NOT EXHAUST HIS AVAILABLE REMEDIES BEFORE**
**FILING SUIT.**
13

14   **A.    Exhaustion is Required Before Filing Suit in Federal Court.**

15        This action must be dismissed because Shamburger has failed to exhaust administrative

16   remedies for the claims in his complaint as required by 42 U.S.C. § 1997e(a). In the Prison

17   Litigation Reform Act, Congress amended 42 U.S.C. § 1997e(a) and imposed a mandatory

18   exhaustion requirement on suits brought by inmates. *See Porter v. Nussle*, 534 U.S. 516, 524

19   (2002). The amended 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

20   respect to prison conditions under section 1983 of this title, or any other Federal law, by a

21   prisoner confined in any jail, prison or other correctional facility until such administrative

22   remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). *Proper* exhaustion of a

23   prisoner's administrative remedies is necessary. *Woodford v. Ngo,* 548 U.S. 81, 83 (2006). The

24   exhaustion requirement is a prerequisite to all federal suits, "[e]ven when the prisoner seeks

25   relief not available in grievance proceedings, notably money damages." *Porter*, 534 U.S. at 524;

26   *see also Booth v. Churner*, 532 U.S. 731, 738 (2001). It applies to "all suits about prison life,

27   whether they involve general circumstances or particular episodes, and whether they allege

28   excessive force or some other wrong." *Porter*, 524 U.S. at 532.

Defs.' Mots. Dismiss & Summ. J.                                    *Shamburger v. Kirkland, et al.*
                                                                      C 07-4597 JSW (PR)

4

1       The purposes of the exhaustion requirement are to "afford corrections officials time and

2  opportunity to address complaints internally before allowing the initiation of a federal case," to

3  "filter out some frivolous claims," and to possibly "satisfy the inmate, thereby obviating the need

4  for litigation." *Porter*, 534 U.S. at 525; *see also Booth*, 532 U.S. at 737 (stating that "requiring

5  [administrative] exhaustion . . . would satisfy some inmates who start out asking for nothing but

6  money, since the very fact of being heard and prompting administrative change can mollify

7  passions"). Finally, for suits that do end up in federal court, exhaustion tends to improve their

8  quality by creating an administrative record that is helpful to the court in determining the

9  contours of the controversy. *Woodford*, 548 U.S. at 92; *see also Booth*, 534 U.S. at 525.

10      The Ninth Circuit recognizes a defendant's right to raise a plaintiff's failure to exhaust

11  administrative remedies in a "nonenumerated" Rule 12(b) motion to dismiss. *Wyatt v. Terhune*,

12  315 F.3d 1108, 1119-20 (9th Cir. 2003); *Ritza v. Int'l Longshoremen's & Warehousemen's*

13  *Union*, 837 F.2d 365, 368–69 (9th Cir. 1988). A defendant can support the motion with evidence

14  and affidavits extrinsic to the complaint. *Wyatt*, 315 F.3d at 1119-20. The Court can resolve

15  factual issues, which are reviewed for clear error. *Ritza*, 837 F.2d at 369. The proper remedy for

16  failure to exhaust administrative remedies is dismissal without prejudice. *Id.* at 1120; *McKinney*

17  *v. Carey*, 311 F.3d 1198, 1199–201 (9th Cir. 2002).

18  **B.    Shamburger Exhausted One Related Administrative Grievance Preceding This Action.**

19      Shamburger identifies his two administrative grievances that form the basis of his action;

20  they are attached to his complaint following Exhibit D, in a section titled Exhaustion of

21  Administrative Remedies. (Compl.) Shamburger thus concedes, at least implicitly, that none of

22  his other administrative grievances concern the claims at issue here. *See, e.g., Wyatt v. Terhune*,

23  315 F.3d 1108, 1120 (9th Cir. 2003).

24      The grievance identified by number 02-01353 was first submitted by Shamburger on May 6,

25  2002, and was partially granted by the Pelican Bay warden on June 26, 2002. The appeal

26  addressed two issues. The first issue concerned a confiscated dictionary, and Shamburger was

27  ultimately allowed to decide the disposition of the dictionary. The second issue concerned denial

28  of an earlier grievance from April 25, 2000 (see Compl. 11, ¶ 62), which took issue with

Defs.' Mots. Dismiss & Summ. J.                                                                 *Shamburger v. Kirkland, et al.*
C 07-4597 JSW (PR)

5

1  CDCR's February 2000 determination that Shamburger was an active prison-gang member who

2  would remain indeterminately in the SHU.  Although the April 25, 2000 grievance was denied

3  for its untimely submission, CDCR retained no evidence of Shamburger's submission date, and

4  the Pelican Bay warden decided to allow Shamburger to file a new grievance appealing the

5  February 2000 decision that he remained an active prison-gang member.  Although Shamburger

6  asserts that he was prevented from exhausting a renewed grievance concerning his active prison-

7  gang status (see Compl. 11–12, ¶¶ 65–69), he ultimately later did exhaust this issue in the

8  grievance discussed below.

9      In the grievance identified by number 06-01933, which Shamburger submitted on August 7,

10  2006, Shamburger makes two allegations: (1) that he was denied timely and meaningful 180-day

11  committee reviews concerning his housing, and review by the Director's Review Board for

12  prospective release to the general population; and (2) that the three source items used to

13  determine that he was an active prison-gang member in 2006 were unreliable.  Shamburger

14  exhausted this grievance on January 17, 2007.

15  **C.  Shamburger's Administrative Grievances Did Not Address the Allegations Related to
    his Fourth, Fifth, and Seventh Claims.**

16

17      Although Shamburger did exhaust administrative remedies concerning his allegations that

18  he is not an active prison-gang member and not receiving regular and meaningful housing

19  reviews, his appeals did not address the allegations from his fourth, fifth, and seventh claims.

20      Specifically, Shamburger's fourth claim alleges a First Amendment violation in that he

21  opines he remains in SHU as retaliation for his jailhouse lawyering (Compl. 16)—although

22  issues of First Amendment speech and retaliation are not remotely touched on by the grievances

23  pointed to by Shamburger himself as meeting his exhaustion requirement before filing suit.

24      Similarly, Shamburger's fifth claim alleges that his retention in the SHU rises to an Eighth

25  Amendment violation of the clause prescribing cruel and unusual punishment.  (Compl. 16–17.)

26  Shamburger's seventh claim likewise alleges that his retention in the SHU rises to an Eighth

27  Amendment violation of the clause prescribing cruel and unusual punishment, and that

28  Defendants have been deliberately indifferent to his well-being by allowing him to be housed in

Defs.' Mots. Dismiss & Summ. J.                                                    *Shamburger v. Kirkland, et al.*
                                                                                    C 07-4597 JSW (PR)

1   the SHU. (Compl. 17.) But Shamburger did not exhaust a grievance alleging that his conditions

2   in the SHU were inhabitable, oppressive, or somehow amounted to cruel and unusual

3   punishment, or that Defendants have disregarded some risk to his well-being by leaving him to

4   remain in the SHU. Indeed, Shamburger does not even discuss these details in his complaint.

5       Because Shamburger's administrative appeals did not exhaust his administrative remedies

6   for his fourth, fifth, and seventh claims, these claims must be dismissed.

## II.
## CLAIMS RISING FROM BEFORE SEPTEMBER 2003 ARE BARRED BY THE STATUTE OF LIMITATIONS.

**A.    Shamburger's Allegations Arguably Date Back to 2000.**

10      The statute of limitations begins to run once a plaintiff's cause of action has accrued. *See*

11  *Two Rivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1998). Accrual, which is determined by federal

12  law for civil-rights claims, occurs "when the plaintiff knows or has reason to know of the injury

13  which is the basis of the action." *Id.* Here, Shamburger describes a February 2000 decision to

14  continue to retain him in the SHU, and his attempts to exhaust administrative remedies

15  concerning the issue. (Compl. 11.) Shamburger also describes a string of allegedly improper

16  housing-committee decisions from December 2001 to January 2003. (Compl. 6.) Shamburger

17  had reason to know of any injuries rising from the above incidents as they occurred, thus

18  triggering accrual.

**B.    The Limitations Period Applicable to Shamburger's § 1983 Claims Is Two Years at Most.**

21      Although federal law determines accrual, state law determines the statute of limitations for §

22  1983 suits because § 1983 does not have its own federal limitations period. *See id.; Wilson v.*

23  *Garcia,* 471 U.S. 261, 275 (1985). Because § 1983 actions are best characterized as actions for

24  injuries to personal rights, federal courts borrow the state statute of limitations that applies to

25  personal-injury actions. *See McDougal v. County of Imperial,* 942 F.2d 668, 672–74 (9th Cir.

26  1991). In California, two years has been the relevant limitations period since January 1, 2003.

27  Cal. Civ. Proc. Code § 335.1 (West 2006). Before January 1, 2003, the limitations period was

28  only one year. Cal. Civ. Proc. Code § 340 (West 2002) (amended 2003). Although California

Defs.' Mots. Dismiss & Summ. J.                                    *Shamburger v. Kirkland, et al.*
                                                                    C 07-4597 JSW (PR)

1  Code of Civil Procedure section 335.1 extended that period to two years on January 1, 2003,

2  "[t]he terms of section 335.1 make plain that this change in statute of limitations does not apply

3  retroactively . . . ." *See Jones v. Blanas* 393 F.3d 918, 927 (9th Cir. 2004) (holding that the new

4  statute of limitations does not apply retroactively).

5  **C.  Shamburger's Claims for Equitable Relief Toll for Two Years.**

6      State law determines tolling issues in federal-civil-rights actions. *Hardin v. Straub,* 490

7  U.S. 526, 539 (1989); *Bd. of Regents v. Tomanio,* 446 U.S. 478, 485-86 (1980).  Under

8  California law, inmates who are sentenced "for a term less than life," like Shamburger, are

9  entitled to a two-year tolling period for claims seeking equitable relief.  Cal. Civ. Proc. Code §

10  352.1(a), (c) (West 2006).

11  **D.  Shamburger Filed His Complaint More Than Four Years After Some Claims Accrued.**

12      Shamburger filed suit on September 5, 2007.  (Compl. 1.)  Between two-years tolling and, at

13  most, a two-year limitations period, any claim accruing before September 2003 is statutorily

14  barred.  Thus, to the extent Shamburger raises any claims concerning events occurring before

15  September 2003 (including the above-discussed and unexhausted fifth and seventh claims

16  alleging that the SHU environs are cruel and unusual), these claims are barred.

17
                                            **III.**
                        **SHAMBURGER'S SECOND CLAIM SHOULD BE DISMISSED**
18                      **BECAUSE HE FAILS TO RAISE A LEGITIMATE CLAIM.**

19      Shamburger's second claim is for violation of due-process rights under the California

20  Constitution, Article I, sections 7 and 15.  (Compl. 15.)  Specifically, Shamburger asserts that

21  inmate housing segregation violates state due-process rights.  (*Id.*)

22      But section 7 of the California Constitution concerns due-process rights affecting students'

23  school assignment and transportation—not state inmates' housing concerns.  And section 15 is

24  equally inapplicable to Shamburger, at least in this civil venue, because the section concerns

25  itself with the due-process rights of criminal defendants.

26      Therefore, Shamburger fails to raise any claim under the California Constitution, and his

27  second claim must be dismissed.

28  //

Defs.' Mots. Dismiss & Summ. J.                                    *Shamburger v. Kirkland, et al.*
                                                                    C 07-4597 JSW (PR)

8

## IV.
## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OF SHAMBURGER'S THIRD AND SOLE REMAINING CLAIM BECAUSE THE EVIDENCE SHOWS THAT HE IS AN ACTIVE PRISON-GANG MEMBER WHO HAS RECEIVED ALL PROCESS DUE HIM.

**A.    Only One of Shamburger's Eight Claims Remains to Be Addressed.**

Of Shamburger's eight alleged claims (Compl. 15–18), the Court screened out the first claim because hardship stemming from the SHU conditions is not so severe as to violate the Due Process Clause. (Order Service 2.) The Court also dismissed without prejudice Shamburger's sixth and eighth claims, because they were unrelated to Shamburger's placement and retention in the SHU. (*Id.* 3.) And as discussed above, Shamburger's fifth and seventh claims, which allege that the SHU living conditions violate Shamburger's Eighth Amendment rights, must be dismissed because they violate the statute of limitations, and because the claims' administrative remedies were never exhausted. Likewise, Shamburger's fourth claim, which alleges that his retention in the SHU is retaliation for jailhouse lawyering, must be dismissed because the claim's administrative remedies were never exhausted. Finally, Shamburger's second claim, which alleges that his retention in the SHU violates state due process under California Constitution Article I, sections 7 and 15, must be dismissed for failure to raise any claim because the identified sections concern student transportation (section 7) and defendants in criminal cases (section 15).

In sum, only Shamburger's third claim remains to be addressed. In it, Shamburger alleges violation of a state-created liberty interest protected by his federal due-process rights. (Order Service 2; Compl. 15–16.) Shamburger organizes this claim into six sub-claims, A through F.

**B.    Defendants Are Entitled to Summary Judgment of Sub-Claims A, B, and D Because the Undisputed Evidence Shows that Shamburger Received All Process Due Him.**

**1.    Contrary to Sub-Claim A, Shamburger Received Proper Housing Hearings.**

In sub-claim A, Shamburger alleges that he was not allowed to present evidence or witnesses to refute his prison-gang status before his SHU term began. (Compl. 16.) But his SHU term began in 1995, when he was first validated as a prison-gang member. (Decl. Rice ¶ 4.) Such a claim is clearly barred by the statute of limitations. Rather, Shamburger must be

Defs.' Mots. Dismiss & Summ. J.                                    *Shamburger v. Kirkland, et al.*
C 07-4597 JSW (PR)

9

1   taking issue with his housing-committee reviews, which he alleged were neither timely nor

2   meaningful in his exhausted administrative grievance. But Shamburger is wrong on both these

3   counts. If he is complaining that he was denied state rights without due process, he must first

4   show that his state rights were violated—which he cannot.

5       Shamburger received more housing reviews than are required. CDCR provides inmates

6   housed indeterminately in the SHU, like validated prison-gang members such as Shamburger,

7   with regular classification-committee reviews of housing at least every 180 days. Cal. Code

8   Regs. tit. 15, § 3341.5(c)(2)(A). The undisputed evidence shows that between December 2001

9   and January 2008—a period of roughly six years—Shamburger received fifteen classification-

10  committee reviews concerning his housing, which is three more reviews than the two-per-year

11  requirement.

12      Shamburger's allegation that these housing reviews were not meaningful lies somewhere

13  between implausibility and hypocrisy because—in every one of these fifteen housing

14  reviews—Shamburger is documented to have refused to appear before the committee.

15  Shamburger cannot constantly eschew the due process offered to him, and then sue for its

16  absence.

17      Finally, Shamburger complained in his exhausted administrative grievance that he never

18  received a review by the Director's Review Board between February 2000 and March 2006. This

19  should be true because only an inactive prison-gang member can appear before the Departmental

20  Review Board to be considered by the board for a housing move to the general prison population.

21  *See* Cal. Code Regs. tit. 15, § 3341.5(c)(5). And Shamburger has never been placed on inactive

22  prison-gang status. Indeed, this suit turns primarily on Shamburger's contention that his 2006

23  gang-status review, which concluded that Shamburger remained an active prison-gang member,

24  relied on unreliable evidence to form this conclusion. Since Shamburger's 1995 prison-gang

25  validation, he has never been placed on inactive status. Therefore, his dearth of appearances

26  before the Departmental Review Board is completely appropriate.

27  //

28  //

Defs.' Mots. Dismiss & Summ. J.                    *Shamburger v. Kirkland, et al.*
                                                       C 07-4597 JSW (PR)

10

1    **2.    Contrary to Sub-Claim D, Housing Committees All Noted that Shamburger Was an Active Prison-Gang Member.**

2

3    In sub-claim D, Shamburger wrongly alleges that he was retained in the SHU without

4    housing committees determining that he was an active prison-gang member. (Compl. 16.)

5    Contrary to this allegation, each of the fifteen properly performed housing-committee reviews

6    made note of the fact that Shamburger is an active prison-gang member.

7    **3.    Contrary to Sub-Claim B, Shamburger Remains a Threat to Prison Security.**

8    In sub-claim B, Shamburger asserts that Defendants wrongly retained him in the SHU

9    although he poses no threat to prison security. (Compl. 16.) But as discussed above,

10    Shamburger was validated as a prison-gang member in 1995, and he has never had his active

11    status with the prison gang changed to inactive. And state law observes that prison-gang

12    members present "a severe threat to the safety of others or the security of the institution and will

13    be placed in a SHU for an indeterminate term." Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A)(2).

14    Because Shamburger is a validated and active prison-gang member, his retention in the SHU

15    merely complies with state law and does not present any due-process violation.

16    **C.    The Court Screened Out Sub-Claims E and F.**

17    The Court, in its screening order, already dismissed Shamburger's unrelated claim

18    concerning access to legal materials. (Order Service 3.) Shamburger not only raised this

19    contention as his sixth claim (Compl. 17), but also as sub-claim F under his third claim (Compl.

20    16).

21    In addition, the Court's screening order made clear that the only actions remaining pertained

22    to Shamburger's placement and retention in the SHU. (Order Service 2.) In sub-claim E,

23    Shamburger alleges that his difficulty in exhausting his administrative grievance concerning his

24    retention in the SHU rose to a due-process violation. But the alleged unavailability of an

25    administrative remedy does not concern Shamburger's placement and retention in the SHU, and

26    is thus screened out by the Court's order. (*See id.*)

27    In any event, sub-claim E is meritless. Shamburger has no constitutional right to a prison

28    administrative-appeal system. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). A prison

Defs.' Mots. Dismiss & Summ. J.                                        *Shamburger v. Kirkland, et al.*
                                                                        C 07-4597 JSW (PR)

1    official's involvement and actions in reviewing or investigating a prisoner's administrative

2    appeal cannot serve as the basis for liability under a § 1983 action. *See Ramirez v. Galaza*, 334

3    F.3d 850, 860 (9th Cir. 2003); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Thus, sub-

4    claim E must be dismissed even if the Court's screening order did not already serve to screen out

5    the sub-claim.

6    **D.    Defendants Are Entitled to Summary Judgment of Sole Remaining Sub-Claim C**
      **Because the Three Reliable Source Items Evidenced Shamburger's Continuing Prison-**
7      **Gang Participation.**

8

9    We now arrive at the crux of Shamburger's complaint, wherein he alleges that the evidence

     used to determine his active gang status in 2006 was unreliable. (Compl. 16.) Shamburger chose
10
     not to dispute the evidence with the IGI, Defendant Correctional Sergeant Stewart (Decl. Rice ¶
11
     9), and instead exhausted an administrative grievance to argue the issue in the courts (Decl.
12
     Roost Supp. Defs.' Mot. Summ. J. (Decl. Roost) ¶ 4), in accord with his documented statement
13
     to Stewart.
14
     To determine that an inmate is in a prison gang, leastwise that he remains active with the
15
     gang years later, the IGI must merely point to "some evidence" to support the decision and the
16
     segregation in SHU. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Here, three
17
     reliable source items indicate Shamburger's active prison-gang participation.
18
     The first source item is a September 8, 2004 report describing a roster of Black Guerilla
19
     Family prison-gang members that was found in another Black Guerilla Family member's
20
     property. (Decl. Rice ¶ 6.) This roster reliably indicates Shamburger's active prison-gang
21
     participation because the roster is almost fully filled with the names of validated Black Guerilla
22
     Family participants, and it identifies Shamburger. (*Id.*) This roster is thinly camouflaged as a
23
     document from the "New Afrikan Revolutionary Nationalism" (NARN) group, which is
24
     organized by Black Guerilla Family members in the Pelican Bay SHU, shares the same goals as
25
     the Black Guerilla Family, and is an indistinguishable extension of the Black Guerilla Family.
26
     (*Id.*) The NARN document is a request for the release of "political prisoners," and lists Black
27
     Guerilla Family members. (*Id.*) In sum, the NARN list documenting "political prisoners" is a
28

Defs.' Mots. Dismiss & Summ. J.                                          *Shamburger v. Kirkland, et al.*
                                                                         C 07-4597 JSW (PR)

1    cover story to publish a list of Black Guerilla Family members, which is contraband that

2    threatens prison security by allowing prisoners to identify others from within their own gang.

3    (*Id.*)

4         The second source item is a March 2006 report describing two near-identical rosters of

5    validated and active Black Guerilla Family prison-gang participants that were recovered in 2005

6    and 2006 from cells occupied by Black Guerilla Family participants. (Decl. Rice ¶ 7.) The

7    rosters indicate active Black Guerilla Family participants because corrections and additions were

8    added by handwriting. (*Id.*) And the rosters reliably indicate that Shamburger is an active

9    prison-gang participant because he was identified on them as "H. Shamburger." (*Id.*)

10        The third source item is a January 31, 2003 report from a debriefing prison-gang member.

11   (Decl. Rice ¶ 8.) The report reliably indicates that Shamburger is an active prison-gang

12   participant because the debriefing inmate identified Shamburger as a participant in the Black

13   Movement, another group like NARN that is organized by Black Guerilla Family and is an

14   indistinguishable extension of Black Guerilla Family. (*Id.*) Shamburger was identified by the

15   debriefing inmate through the alias "Rafiki Blackness." (*Id.*) The cumulative intelligence

16   resources of CDCR and the Office of Correctional Safety includes proper identification of

17   prison-gang-members' aliases, and Shamburger is reliably known to go by the alias "Rafiki

18   Blackness." (*Id.*) The debriefing inmate's information is reliable because it included admissions

19   against his own interest, as well as numerous details that are fact-checked by the cumulative

20   intelligence of CDCR and the Office of Correctional Safety. (*Id.*)

21        Because reliable evidence demonstrates Shamburger's continuing prison-gang participation,

22   Defendants are entitled to summary judgment.

23                                    **V.**
                    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**
24

25   **A.    The Standard for Finding Qualified Immunity.**

26        The defense of qualified immunity protects "government officials . . . from liability for civil

27   damages insofar as their conduct does not violate clearly established statutory or constitutional

28   rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

Defs.' Mots. Dismiss & Summ. J.                              *Shamburger v. Kirkland, et al.*
                                                              C 07-4597 JSW (PR)

13

1   818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly

2   incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991)

3   (citation omitted).

4        When a governmental official is accused of a constitutional violation, a particular sequence

5   of questions must be considered to determine if qualified immunity exits. *See Saucier v. Katz*,

6   533 U.S. 194 (2001). First, a court must ask: "Taken in the light most favorable to the party

7   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

8   right?" *Id.* at 201. If no constitutional right was violated under the alleged facts, the inquiry ends

9   and defendants prevail. *Saucier*, 533 U.S. at 204.

10       If, however, a constitutional violation could be construed on a favorable view of the

11   opposing party's submissions, the next step is to determine whether the right was clearly

12   established. *Id.* at 201–02. The right's contours must be so clear that a reasonable official would

13   know that his actions violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The

14   relevant, dispositive inquiry in determining whether a right is clearly established is whether it

15   would be clear to a reasonable officer that his conduct was unlawful in the situation he

16   confronted." *Saucier*, 533 U.S. at 202. Officers can make mistakes about what evidence

17   requires an inmate's further retention in the SHU, yet they will still be protected by qualified

18   immunity as long as they acted reasonably under the circumstances. *Id.* at 205–06.

19       **B. No Defendant Violated Any of Shamburger's Constitutional Rights.**

20       The first step under *Saucier* is to determine whether, taken in the light most favorable to the

21   party asserting the inquiry, the facts alleged show that the officer's conduct violated a

22   constitutional right. *Saucier*, 533 U.S. 194. As discussed above, Shamburger cannot make out a

23   constitutional violation here. Under *Saucier*, this Court's inquiry should end here.

24       **C. Defendants Are Entitled to Qualified Immunity Because It Would Not Have Been**
         **Clear to Reasonable Officials that Their Conduct Was Unlawful.**

25

26       Even if Shamburger's allegations were to establish a constitutional violation, Defendants

27   would not clearly have known that their conduct was unlawful. *Saucier*, 533 U.S. at 202.

28   Officers can make mistakes about the facts requiring a response, yet they will still be protected

Defs.' Mots. Dismiss & Summ. J.                                        *Shamburger v. Kirkland, et al.*
                                                                       C 07-4597 JSW (PR)

1   by qualified immunity as long as they acted reasonably under the circumstances. *Id*. at 205–06.

2       Even assuming that the policies and regulations and living conditions at issue are

3   unconstitutional, Defendants are still entitled to qualified immunity because it would not have

4   been clear to a reasonable official in any of Defendants' situations that the conduct at issue was

5   clearly unlawful. Shamburger fails to point out where a reasonable official in any of Defendants'

6   positions would have thought they were clearly engaged in unlawful conduct violating an

7   inmate's constitutional rights. Rather, as shown above, Defendants properly followed state law

8   and prison procedure, and reasonable officials in their position could have thought their actions

9   were lawful.

10

11                              **Conclusion**

12       Because Shamburger failed to exhaust administrative remedies for most claims before filing

13   this action, and because other claims were screened out or barred by the statute of limitations,

14   Shamburger's only claim not to be dismissed concerns his due process in being retained in the

15   SHU.

16   //

17   //

18

19

20

21

22

23

24

25

26

27

28

1    Defendants are entitled to summary judgment concerning this remaining due-process claim

2  because Shamburger regularly received proper housing reviews, and because reliable evidence

3  indicated Shamburger's continuing prison-gang participation.  Further, Defendants are entitled to

4  qualified immunity because Shamburger's rights were not violated, and reasonable officials in

5  Defendants' positions could believe their behavior was lawful.

6

7    Dated:  August 14, 2008

8                    Respectfully submitted,

9                    EDMUND G. BROWN JR.
                     Attorney General of the State of California

10                   DAVID S. CHANEY
                     Chief Assistant Attorney General

11                   ROCHELLE C. EAST
                     Senior Assistant Attorney General

12
                     THOMAS S. PATTERSON
13                   Supervising Deputy Attorney General

14

15

16                   KENNETH T. ROOST
                     Deputy Attorney General
17                   Attorneys for Defendants Cook, Fischer, Foss, Kirkland,
                     McGuyer, O'Neill, Pena, Randolph, Ruff, Smith, and Stewart
18

19

20  20127066.wpd
    SF2008200041
21

22

23

24

25

26

27

28

Defs.' Mots. Dismiss & Summ. J.                                    *Shamburger v. Kirkland, et al.*
                                                                   C 07-4597 JSW (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Shamburger v. Kirkland, et al.**

Case No.:    **C 07-4597 JSW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 14, 2008, I served the attached

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION OF KENNETH T. ROOST IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF LT. R. RICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Harold B. Shamburger
D-16530
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 14, 2008**, at San Francisco, California.

| M. Xiang | |
|---|---|
| Declarant | Signature |