1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5824
     Fax: (415) 703-5843
8    Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants Cook, Fischer, Foss,
   Kirkland, McGuyer, O'Neill, Pena, Randolph, Ruff,
10 Smith, and Stewart

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HAROLD B. SHAMBURGER,<br><br>              Plaintiff,<br><br>    v.<br><br>R. KIRKLAND, et al.,<br><br>              Defendants. | C 07-4597 JSW (PR)<br><br>**DECLARATION OF LT. R. RICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, R. RICE, declare:

1. I have worked for the California Department of Corrections and Rehabilitation (CDCR) for more than twenty years. I am now a Correctional Lieutenant at Pelican Bay State Prison, where I work as an Institutional Gang Investigator (IGI). In my current position, I am familiar with CDCR policies and procedures concerning the validation of inmates as prison-gang members, the status reviews of prison-gang members to determine whether they are active in their prison gang, and the variety of source items that can reliably evidence continuing prison-gang participation. I am competent to testify to the matters set forth in this declaration, and if

1  called upon to do so, I would and could so testify. I submit this declaration in support of
2  Defendants' summary-judgment motion.

3      2.    PBSP is a high-security prison, housing some of the most-dangerous convicted
4  criminals in California. The SHU is the highest-security inmate housing at PBSP, and arguably
5  throughout all of the state's prisons. The SHU is reserved for inmates whose conduct
6  particularly endangers the security of the prison and general inmate population.

7      3.    Validated prison-gang members are usually housed in the SHU to isolate them from the
8  general population and limit their communications, which—if they reached other inmates—could
9  greatly endanger security by, for instance, coordinating and commanding assaults on correctional
10 officers and other inmates.

11     4.    Plaintiff Shamburger is one such prison-gang member who is housed in PBSP's SHU,
12 in part to limit his potentially dangerous communications with other inmates. Shamburger was
13 validated in 1995 by CDCR as a member of the Black Guerilla Family (BGF) prison gang. He
14 has since been housed in the PBSP SHU.

15     5.    In 2006, Defendant Correctional Sergeant Stewart, an IGI, investigated Shamburger for
16 recent prison-gang activity to determine whether he was still actively involved in the BGF prison
17 gang. Three confidential source items indicating his continuing prison-gang participation were
18 documented by Sgt. Stewart and independently reviewed and approved by the Office of
19 Correctional Safety: (1) a September 8, 2004 report describing a BGF roster found in a BGF
20 member's property, which identifies Shamburg; (2) a March 29, 2006 report describing an
21 active-BGF roster found in the possession of three other BGF participants; and (3) a January 31,
22 2003 report from a debriefing prison-gang member, identifying Shamburger as a part of the
23 Black Movement, which is a BGF group. I have reviewed these three source items, and detail
24 below why they are reliable indicia of Shamburger's continuing prison-gang participation.

25     6.    The first source item is a September 8, 2004 report describing a roster of BGF prison-
26 gang members that was found in another BGF member's property. This roster is a reliable
27 indicator that Shamburger is an active prison-gang participant because the roster consists almost
28 entirely of validated BGF participants, and it identifies Shamburger. This roster is thinly

Decl. Rice Supp. Defs.' Mot. Summ. J.          *Shamburger v. Kirkland, et al.*
                                                   C 07-4597 JSW (PR)

1  camouflaged as a document from the "New Afrikan Revolutionary Nationalism" (NARN) group,
2  which is organized by BGF members in the PBSP SHU, shares the same goals as BGF, and is an
3  indistinguishable extension of BGF. The NARN document is a request for the release of
4  "political prisoners," and lists BGF members. In sum, the NARN list documenting "political
5  prisoners" is a cover story to publish a list of BGF members, which is contraband that threatens
6  prison security by allowing prisoners to identify others from within their own gang.

7  7. The second source item is a March 2006 report describing two near-identical rosters of
8  validated and active BGF prison-gang participants that were recovered in 2005 and 2006 from
9  cells occupied by BGF participants. The rosters indicate active BGF participants because
10 corrections and additions were added by handwriting. And the rosters are reliable indicators that
11 Shamburger is an active prison-gang participant because he was identified on them as "H.
12 Shamburger."

13 8. The third source item is a January 31, 2003 report from a debriefing prison-gang
14 member. The report is a reliable indicator that Shamburger is an active prison-gang participant
15 because the debriefing inmate identified Shamburger as a participant in the Black Movement,
16 another group like NARN that is organized by BGF and is an indistinguishable extension of
17 BGF. Shamburger was identified by the debriefing inmate through the alias "Rafiki Blackness."
18 The cumulative intelligence resources of CDCR and the Office of Correctional Safety includes
19 proper identification of prison-gang-members' aliases, and Shamburger is reliably known to go
20 by the alias "Rafiki Blackness." The debriefing inmate's information is reliable because it
21 included admissions against his own interest, as well as numerous details that are fact-checked by
22 the cumulative intelligence of CDCR and the Office of Correctional Safety.
23 //
24 //

Decl. Rice Supp. Defs.' Mot. Summ. J.                                    *Shamburger v. Kirkland, et al.*
                                                                          C 07-4597 JSW (PR)

9. In accord with CDCR procedure, Shamburger was issued a description of these three source items on March 29, 2006. Two days later, Shamburger was interviewed by Correctional Sergeant Stewart in regard to the source items. Shamburger declined to dispute the validity of any of the source items, in writing or orally, and instead said, "I have it in the courts."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed at Crescent City, California.

August 13, 2008
Date

R. RICE

20130471.wpd
SF2008200041

Decl. Rice Supp. Defs.' Mot. Summ. J.

*Shamburger v Kirkland, et al*
C 07-4597 JSW (PR)

4